UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CONSUMERS WAREHOUSE CENTER, INC.,

                        Plaintiff(s),

            -against-                                    Index No.: CV-05 5549
                                                               (JG) (MO)


INTERCOUNTY APPLIANCE CORPORATION
and NECO ALLIANCE, LLC,
                        Defendant(s).
-------------------------------------------------------------X


MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT'S MOTION FOR AN
ORDER DISMISSING THE COMPLAINT


Weinberg, Gross & Pergament LLP
Attorneys for Intercounty Appliance Corporation
400 Garden City Plaza
Garden City, New York 11530
(516) 877-2424

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

ARGUMENT ............................................................................................................4

    POINT I

        STANDARD OF REVIEW ........................................................................4

    POINT II

        PLAINTIFF LACKS STANDING TO
        PROSECUTE THIS ACTION.......................................................................5

    POINT III

        PLAINTIFF HAS NOT ALLEGED FACTS
        TO ESTABLISH A PER SE VIOLATION................................................10

    POINT IV

        PLAINTIFF HAS NOT ALLEGED A COGNIZABLE
        PRODUCT MARKET OR GEOGRAPHIC MARKET............................15

    POINT V

        PLAINTIFF'S DONNELLY ACT
        CLAIM SHOULD BE DISMISSED ........................................................17

CONCLUSION.......................................................................................................18

## TABLE OF AUTHORITIES

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 110 S.Ct. 1884 (1990) ...............5, 6

*Balaklaw v. Lovell*, 14 F.3d 793 (2d Cir. 1994) ......................................................5, 8

*Bennett v. Cardinal Health Marmac Distributors, Inc.*, No. 02 Civ. 3095,
    2003 WL 21738604 (E.D.N.Y. July 14, 2003) ..............................................11

*Boddie v. Schneider*, 105 F.3d 857 (2d Cir. 1997) ......................................................4

*Bogan v. Hodgkins*, 166 F.3d 509 (2d Cir. 1999) .....................................................13

*Bologna v. Allstate Ins. Co.*, 138 F.Supp.2d 310 (E.D.N.Y. 2001) ...........................7, 17

*Chapman v. New York State Div. for Youth*, 04 Civ. 8672005,
    2005 WL 2407548 (N.D.N.Y. September 29, 2005) ........................................14

*Continental Orthopedic Appliances, Inc. v. Health Ins. Plan*, 40 F.Supp.2d 109
    (E.D.N.Y. 1999) ................................................................................ 15

*Daniel v. American Bd. of Emergency Medicine*, 428 F.2d 408 (2d Cir. 2005) .............. 5, 7, 8, 10

*Dresses for Less, Inc. v. CIT Group/Commercial Services, Inc.*, No. 01 Civ. 2669,
    2002 WL 31164482 (S.D.N.Y. September 30, 2002) ........................................ 6

*Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451,112 S.Ct. 2072 (1992) ...................... 15

*E&L Consulting, Ltd. v. Doman Industries Ltd.*, 360 F.Supp.2d 465 (E.D.N.Y. 2005) ...............15

*Eon Labs Manufacturing, Inc. v. Watson Pharmaceuticals, Inc.*, 164 F.Supp.2d. 350
    (S.D.N.Y. 2001) ................................................................................ 4

*Evac, LLC v. Pataki*, 89 F.Supp.2d 250 (N.D.N.Y. 2000) ...........................................16

*Floors-N-More, Inc. v. Freight Liquidators*, 142 F.Supp.2d 496
    (S.D.N.Y. 2001) ................................................................................ 8

*Furlong v. Long Island College Hosp.*, 710 F.2d 922 (2d Cir. 1983) ........................................ 4, 9

*Heart Disease Research Foundation v. General Motors Corp.*, 463 F.2d 98
    (2d Cir. 1972) ................................................................................ 9, 10

*In re Nine West Shoes Antitrust Litig.*, 80 F.Supp.2d 181 (S.D.N.Y. 2000) ...................................6

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697

(2d Cir. 1994) ................................................................................................................ 4

*Korshin v. Benedictine Hospital*, 34 F.Supp.2d 133 (N.D.N.Y. 1999) ...........................................9

*National Camp Assn., Inc. v. Amercian Camping Assn., Inc.*, No. 99 Civ. 11853,
    2000 WL 1844764 (S.D.N.Y. December 15, 2000) ...................................................11, 14

*K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.*,
    61 F.3d 123(2d Cir. 1995) ........................................................................................ 13, 14

*National Camp Assn., Inc. v. Amercian Camping Assn., Inc.*, No. 99 Civ. 11853,
    2000 WL 1844764 (S.D.N.Y. December 15, 2000) .........................................................11

*Northern Pacific R. Co. v. United States,* 356 U.S. 1, 78 S.Ct. 514 (1958) .................................11

*Northwest Stationers v. Pacific Stationery*, 472 U.S. 284, 105 S.Ct. 2613(1985) ............11, 12, 13

*Rock TV Entertainment, Inc. v. Time Warner, Inc.*, No. 97 Civ. 0161,
    1998 WL 37498 (S.D.N.Y. Jan. 30, 1998) ...................................................................6, 8

*Sage Realty Corp. v. ISS Cleaning Services Group, Inc.*, 936 F.Supp.130
    (S.D.N.Y. 1996) .......................................................................................................... 6, 8

*Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502 (1911) ...........................................10

*S.O. Textiles, Inc. v. A&E Products Group*, 18 F.Supp.2d 232 (S.D.N.Y. 1998) ........................17

*The Orthopedic Studio, Inc. v. Health Ins. Plan of Greater New York, Inc.*,
    No. 95 Civ. 4338, 1996 WL 84503 (E.D.N.Y. February 9, 1996) ...................................4

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001) .....................................................................16

*United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 404, 76 S.Ct. 994 (1956) .........15

*U.S. v. Long Island Jewish Medical Center*, 983 F.Supp. 121 (E.D.N.Y. 1997) .........................17

*Volmar Distributors, Inc. v. The New York Post Co., Inc.*,
    825 F.Supp. 1153 (S.D.N.Y. 1993) .....................................................................6, 7, 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CONSUMERS WAREHOUSE CENTER, INC.,      CV-05 5549
                                  (JG) (MO)

              Plaintiff,

      -against-

INTERCOUNTY APPLIANCE CORPORATION
and NECO ALLIANCE, LLC,

             Defendants.
----------------------------------------------------------------X

## PRELIMINARY STATEMENT

Defendant Intercounty Appliance Corporation ("Intercounty") respectfully submits this Memorandum of Law in support of its motion for an Order pursuant to 12(b)(6) of the Federal Rules of Civil Procedure ("Rule") dismissing the Complaint and for such other and further relief as the Court deems just and proper.

The Complaint should be dismissed because the Plaintiff has failed to state a claim under Section 1 of the Sherman Act or New York's Donnelly Act. Among other things, the Plaintiff has failed to allege facts to establish: (1) an antitrust injury; (2) a *per se* unreasonable restraint of trade; or (3) a legally sufficient geographic or product market.

## THE COMPLAINT

According to the Complaint, Plaintiff is "in the business of the retail sale of kitchen and bath furnishings, including appliances such as refrigerators, freezers, ovens and dishwashers which are classified as 'high end' brands ... in that they are more expensively priced as compared to the more popular 'mid-level' brands." (A copy of the Complaint is annexed as Exhibit "A" to the accompanying Notice of Motion.) Plaintiff does not allege where it conducts its business.

Plaintiff describes Intercounty as a group of members "primarily engaged in the business of the sale of mid-level appliances to the Long Island, New York market,"[1] and alleges that Intercounty "serves as a buying group or a cooperative on behalf of its members for the purpose of affording to them the advantages inherent in a cooperative as a large volume purchaser, including a lower purchase price of the appliance, maintenance of a warehouse facility, effective access and control of dealer approval to all major brands, such as, General Electric, Whirlpool, Maytag, Frigidaire and other competitive advantages." (Ex. A, ¶ 7.)

Plaintiff alleges that members of Intercounty are able to "sell mid-level appliances at retail at significantly lower prices than any dealer who is not a member of Intercounty or another group, thereby effecting a restraint of trade in that one not a member must pay appliance manufacturers a higher price than afforded to such group members, and by not being a member, cannot enjoy the advantage of warehousing inventory and the ability to rapidly make delivery to the retail customers, thereby barring non-members of the group from the mid-level appliance market in the market area in which they primarily sell." (Ex. A, ¶ 18.)

Plaintiff further alleges that the members of Intercounty and co-Defendant Neco Alliance, LLC ("Neco") "possess exclusive access to elements, such as, acceptance by major manufacturers of the rights to purchase the necessary lines of products to compete in the Long Island appliance market which are essential to the effective competition in the Long Island mid-level appliance market." (Ex. A, ¶ 20.) Plaintiff claims that the ability of the members of

---

[1] While Intercounty understands that for purposes of this motion, this Court must accept the facts as alleged as true, it is a matter of public record that only eighteen (18) of Intercounty's approximately ninety (90) members are located in the counties of Nassau and Suffolk. The remaining members are located in other counties in New York (27), and the states of New Jersey, Connecticut, Pennsylvania, Maryland, Washington DC, Virginia, Rhode Island and Massachusetts (45).

Intercounty to buy mid-level appliances at discounted prices gives Intercounty "substantial market power ... in the Counties of Nassau and Suffolk in the State of New York." (Ex. A, ¶ 14, 15.)

In Count I, the Plaintiff claims that the denial of Plaintiff's application for membership in Intercounty and Neco constitutes a "group boycott which restrains competition and has limited the ability of [Plaintiff] to compete in the aforesaid market and therefore constitutes a <u>per se</u> violation of Section 1 of the" Sherman Act. (Ex. A, ¶ 29.) The Plaintiff seeks treble damages, interest, costs and attorney's fees pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15(a). (Ex. A, p. 7.) In Count II, the Plaintiff alleges that Intercounty's and Neco's conduct constitutes a violation of the Donnelly Act, for which the Plaintiff seeks compensatory damages in the minimum amount of $40,000,000.00. (Ex. A, p. 7.) Plaintiff further seeks to enjoin Intercounty and Neco from "refusing to admit Consumers to membership as a stockholder thereof and a member enjoying all of the benefits available to members," and an order directing Intercounty and Neco to "admit Consumers to membership and stock ownership with full benefits available to members." (Ex. A, pp. 7-8.)

3

## ARGUMENT

## POINT I

### STANDARD OF REVIEW

In order to survive dismissal under Rule 12(b)(6), a plaintiff must "assert a cognizable claim and allege facts that, if true, would support such a claim." *Boddie v. Schneider*, 105 F.3d 857, 860 (2d Cir. 1997). In reviewing the allegations for legal sufficiency, a court must take all facts alleged in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699-700 (2d Cir. 1994).

In the antitrust context, "conclusory statements [cannot] substitute for minimally sufficient factual allegations." *Furlong v. Long Island College Hosp.*, 710 F.2d 922, 927 (2d Cir. 1983); *see also The Orthopedic Studio, Inc. v. Health Ins. Plan of Greater New York, Inc.*, No. 95 Civ. 4338, 1996 WL 84503, at *1 (E.D.N.Y. February 9, 1996) ("A 'mere allegation that the defendants violated the antitrust laws as to a particular plaintiff and commodity' is insufficient to survive a Rule 12(b)(6) motion."); *Eon Labs Manufacturing, Inc. v. Watson Pharmaceuticals, Inc.*, 164 F.Supp.2d 350, 354 (S.D.N.Y. 2001) ("[t]he heavy costs of modern federal litigation, especially antitrust litigation ... counsel against launching parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint.")

Applying the foregoing standards to the facts alleged in the Complaint, this action should be dismissed.

4

## POINT II

### PLAINTIFF LACKS STANDING
### TO PROSECUTE THIS LAWSUIT

Section 1 of the Sherman Act prohibits "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. In order to bring an action for an alleged violation of Section 1, "a private plaintiff must demonstrate 'standing.'" *Daniel v. American Bd. of Emergency Medicine*, 428 F.2d 408, 436 (2d Cir. 2005). The standing requirement "originates in the Supreme Court's recognition that although Section 4 of the Clayton Act appears to confer a broad private right of action for antitrust damages, 'Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation.'" *Id.*

In *Daniel*, the Second Circuit noted that one of the "basic principles" of antitrust theory developed by courts over time is that "the fact that the plaintiffs charge the defendants, at least in part, with a per se violation of the antitrust laws does not absolve them of the obligation to demonstrate standing." *Daniel*, 428 F.3d at 437; *accord Balaklaw v. Lovell*, 14 F.3d 793, 800 (2d Cir. 1994) ("[f]or standing purposes, however, whether there was or was not a *per se* violation is irrelevant.... Regardless of any substantive violation of the Sherman Act, sections 4 and 16 of the Clayton Act still require plaintiffs to establish that the defendants engaged in anticompetitive conduct that caused them an antitrust injury."). The Second Circuit's insistence upon a showing of antitrust injury regardless of the nature of the substantive violation is consistent with Supreme Court precedent. For example, in *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 110 S.Ct. 1884 (1990), the Court stated:

5

> The antitrust injury requirement ensures that a plaintiff can
> recover only if the loss stems from a competition- *reducing*
> aspect or effect of the defendant's behavior. The need for
> this showing is at least as great under the *per se* rule as
> under the rule of reason. Indeed, insofar as the *per se* rule
> permits the prohibition of efficient practices in the name of
> simplicity, the need for the antitrust injury requirement is
> underscored. '[P]rocompetitive or efficiency-enhancing
> aspects of practices that nominally violate the antitrust laws
> may cause serious harm to individuals, but this kind of
> harm is the essence of competition and should play no role
> in the definition of antitrust damages.' …. Thus, 'proof of a
> per se violation and of antitrust injury are distinct matters
> that must be shown independently.' …. For this reason, we
> have previously recognized that even in cases involving *per
> se* violations, the right of action under § 4 of the Clayton
> Act is available only to those private plaintiffs who have
> suffered antitrust injury. *Atlantic Richfield*, 495 U.S. at
> 344, 110 S.Ct. at 1894 (citations omitted.)

*See also Sage Realty Corp. v. ISS Cleaning Services Group, Inc.*, 936 F.Supp.130, 135

(S.D.N.Y. 1996) ("[a] party asserting an antitrust claim must always allege antitrust injury, even

if it charges that defendants' conducts amounts to a *per se* violation of the Sherman Act."); *In re

Nine West Shoes Antitrust Litig.*, 80 F.S.2d 181, 189 (S.D.N.Y. 2000) ("Regardless of whether a

claim is based on a per se violation, a plaintiff must still plead antitrust injury."); *Volmar

Distributors, Inc. v. The New York Post Co., Inc.*, 825 F.Supp. 1153, 1159 (S.D.N.Y. 1993)

("The fact that defendants' behavior is alleged to be illegal per se under § 1 of the Sherman Act

does not in any way diminish the requirement that plaintiffs show an antitrust injury."); *Dresses

for Less, Inc. v. CIT Group/Commercial Services, Inc.*, No. 01 Civ. 2669, 2002 WL 31164482,

at *9 (S.D.N.Y. September 30, 2002) ("Even when a per se violation of the antitrust laws

occurs, a plaintiff is still required to demonstrate antitrust injury as an element of a successful

claim."); *Rock TV Entertainment, Inc. v. Time Warner, Inc.*, No. 97 Civ. 0161, 1998 WL 37498,

at *3 (S.D.N.Y. Jan. 30, 1998) ("A party asserting an antitrust claim must always show antitrust

6

injury, even if it charges that defendants' conduct amounts to a per se violation of the Sherman Act.").

In discussing the concept of "antitrust injury," the court in *Daniel* noted that "[t]he fact that private plaintiffs have been injured by acts that violate the antitrust laws is not enough to confer standing to sue. Whether the relief they seek is legal or equitable, plaintiffs must demonstrate that they themselves have sustained an antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Daniel*, 428 F.3d at 438. The court stressed that "[i]n this regard, it has long and frequently been observed that 'the antitrust laws ... were enacted for the protection of competition, not competitors." *Id*; *see Bologna v. Allstate Ins. Co.*, 138 F.Supp.2d 310, 320 (E.D.N.Y. 2001) ("Here, [plaintiff] fails to plead the requisite antitrust injury because he alleges injury only to himself as a competitor and does not make specific factual allegations concerning any injury to competition in the market."); *Volmar Distributors*, 825 F.Supp. at 1160 ("To allege an antitrust injury a private plaintiff must 'show that its loss comes from acts that reduce output or raise prices for consumers.'").

To evaluate whether a plaintiff has pled "antitrust injury," the court in *Daniel* instructed that it "is first necessary carefully to consider the nature of plaintiffs' claim." *Daniel*, 428 F.3d at 438. In this action, Plaintiff claims that as a consequence of the denial of its membership in Intercounty, it is "barred from the" market for mid-level appliances in Long Island[2] by the unavailability of volume discounts, multiple manufacturers and access to a warehousing facility. (Ex. A, ¶¶ 26, 27.) This is the type of alleged injury to a competitor, not

---

[2] Intercounty does not concede that Plaintiff has pled a cognizable geographic market or product market. *See* Point IV, *infra*.

competition, which courts have routinely rejected in the antitrust context.

   For example, in *Sage Realty*, the plaintiff alleged that the use of union labor from large cleaning contractors was "critical" to maintaining its position in the market. Accepting this fact, the court nevertheless dismissed plaintiff's Sherman Act claim because "from the consumers' point of view, nothing about the market has changed" as a result of the defendants' conduct. *Sage Realty*, 936 F.Supp. at 137, citing *Balaklaw*, 14 F.3d at 798.

   In *Rock TV*, the plaintiff alleged that it suffered an "antitrust injury" because it went out of business, and that this affected the market for consumers, advertisers and artists, and competition in those markets. In dismissing plaintiff's claim, the court stressed that "Rock TV has not set forth facts demonstrating injury to the rock video programming market, but rather has alleged its own loss of business and the market's loss of a competitor." *Rock TV*, 1998 WL 37498, at *3; *accord Volmar*, 825 F.Supp. at 1161 (dismissing antitrust claims where plaintiffs "have not alleged that defendants' conduct has or will result in any retailer or consumer being in whole or in part denied service, receiving inferior service, or paying a higher price for services received."); *Floors-N-More, Inc. v. Freight Liquidators*, 142 F.Supp.2d 496, 502 (S.D.N.Y. 2001) ("The fact that customers can no longer purchase Ashley furniture products ... at [plaintiffs' store] does not mean that competition has been harmed. For instance, plaintiffs have not alleged that [defendant] is now the only store in the geographic market where customers can purchase products made by the manufacturers, or that prices for the manufacturers' furniture have been affected."); *Daniel*, 428 F.3d at 439 ("[t]he claim that a practice reduces (particular) producers' incomes has nothing to do with the antitrust laws, which are designed to drive producers' prices down rather than up.'").

8

In *Korshin v. Benedictine Hospital*, 34 F.Supp.2d 133 (N.D.N.Y. 1999), the plaintiff doctor alleged that as a result of, *inter alia*, the defendant hospitals' exclusive dealing agreement with a local medical practice known as CRA, he was effectively prevented from practicing his specialty of anesthesiology. The court found that such allegations were insufficient to confer standing on plaintiff to assert antitrust violations. The court noted that plaintiff had failed to allege any change in price of services, a decrease in quality of services, or that patients have less of a market choice, other than their ability to select plaintiff as their anesthesiologist. *Korshin*, 34 F.Supp.2d at 138. The court also noted that while the plaintiff alleged that he was not able to join CRA, there were no allegations that other anesthesiologists in the region could not join CRA. *Korshin*, 34 F.Supp.2d at 138.

The sole focus of Plaintiff's Complaint is its purported inability to compete in the mid-level appliance market. Putting aside that Plaintiff does not allege whether it has solicited membership in one of the other purchasing cooperatives that compete against Intercounty, Plaintiff has not alleged any of the hallmarks of an antitrust injury. For example, Plaintiff has not pled a denial of service, reduced output, reduced quality or increased prices. Plaintiff has merely alleged that the Defendants' conduct "has prevented it from gaining any market share in the market." (Ex. A, ¶ 33.) Based on the authority discussed above, this allegation is insufficient.

With respect to Plaintiff's allegation that "competition" and "the public at large" have been injured by the conduct alleged in the Complaint (Ex. A, ¶¶ 32, 37), such "conclusory statements [cannot] substitute for minimally sufficient factual allegations." *Furlong, supra,* 710 F.2d at 927; *see Heart Disease Research Foundation v. General Motors Corp.*, 463 F.2d 98,

9

100 (2d Cir. 1972) ("a bare bones statement of ... injury under the antitrust laws without any supporting facts permits dismissal.").

Plaintiff's lack of standing is underscored by the relief it seeks in the Complaint. In addition to seeking to recover alleged lost profits, Plaintiff seeks to enjoin Intercounty and Neco from "refusing to admit Consumers to membership as a stockholder thereof and a member enjoying all of the benefits available to members," and an order directing Intercounty and Neco to "admit Consumers to membership and stock ownership with full benefits available to members." (Ex. A, pp. 7-8.) Plaintiff's request to be admitted into Intercounty and Neco undermines its claim of antitrust injury. As stated by the court in *Daniel*:

> The conclusion that plaintiffs do not state an antitrust injury is reinforced by the narrow scope of their injunctive prayer, by which they seek only to join rather than end the exclusive ABEM arrangement in order to acquire a share of the super-competitive profits. Assuming arguendo that the defendants' control over the supply of ABEM-certified doctors does injure competition by restricting supply, plaintiffs cannot themselves state an antitrust injury when their purpose is to join the cartel rather than disband it.... In sum, by seeking relief that would permit them to join but not end the alleged exclusive arrangement, plaintiffs make plain that they are not complaining of an antitrust injury. *Daniel*, 428 F.3d at 440-41.

Likewise here, Plaintiff has "made plain" that it is not complaining of an antitrust injury.

### POINT III

### THE PLAINTIFF HAS NOT ALLEGED
### FACTS TO ESTABLISH A PER SE VIOLATION

Whether Intercounty's conduct violates § 1 of the Sherman Act depends on whether it is adjudged an unreasonable restraint. Rule-of-reason analysis guides the inquiry [see *Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502 (1911)] unless the conduct falls

into the category of "agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Northern Pacific R. Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518 (1958). "While certain concerted refusals to deal or group boycott fall into this category, others do not... Therefore, the mere allegation of a concerted refusal to deal does not justify application of the *per se* rule." *Bennett,* 2003 WL 21738604, at *4, citing *Northwest Stationers v. Pacific Stationery*, 472 U.S. 284, 298, 105 S.Ct. 2613, 2619 (1985); *see National Camp Assn., Inc. v. Amercian Camping Assn., Inc.*, No. 99 Civ. 11853, 2000 WL 1844764 (S.D.N.Y. December 15, 2000) ("While the Supreme Court has held group boycotts to be an example of per se illegal conduct, it has cautioned that this class of restraints 'is not to be expanded indiscriminately.'").

This Court recently summarized the cases to which the *per se* rule applies as follows:

> Generally, the cases to which the *per se* rule has been applied 'involved joint efforts by a firm or firms to disadvantage *competitors* by either directly denying or persuading or coercing suppliers or customers to deny relationships the *competitors* need in the competitive struggle.... The precise circumstances under which the *per se* rule is applied to group boycotts is a recognized source of confusion in antitrust law.... In the Second Circuit, when the anticompetitive effects of the relevant market are not obvious or 'clearly apparent,' courts have denied group boycotts or concerted denials *per se* treatment. *Bennett*, 2003 WL 21738604, at *4 (emphasis in original) (citations omitted.)

In this case, the anticompetitive effects of Intercounty's alleged refusal to deal are neither apparent nor obvious. As conceded by Plaintiff, prior to seeking membership in

11

Intercounty, Plaintiff did not compete in the purported mid-level appliance market. (Ex. A, ¶ 21.) Moreover, Plaintiff has not alleged that Intercounty either directly or indirectly persuaded or coerced or attempted to persuade or coerce any suppliers or customers or other buying cooperatives to deny relationships with the Plaintiff. When considered in light of the Supreme Court's decision in *Northwest Stationers*, the absence of these allegations precludes application of the *per se* standard.

In *Northwest Stationers,* the plaintiff, a member of a wholesale purchasing cooperative consisting of office supply retailers, claimed that its expulsion from the cooperative was a group boycott that limited its ability to compete and should be considered *per se* violative of Section 1 of the Sherman Act. In refusing to accord *per se* treatment to the cooperative's conduct, the Supreme Court noted that "not every cooperative activity involving a restraint or exclusion will share with the *per se* forbidden boycotts the likelihood of predominantly anticompetitive consequences." *Northwest Stationers*, 472 U.S. at 295, 105 S.Ct. at 2620. The Supreme Court explained that:

> [w]holesale purchasing cooperatives such as Northwest are not a form of concerted activity characteristically likely to result in predominantly anticompetitive effects. Rather, such cooperative arrangements would seem to be 'designed to increase economic efficiency and render markets more, rather than less, competitive.' *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., supra,* 441 U.S., at 20, 99 S.Ct. at 1562. The arrangement permits the participating retailers to achieve economies of scale in both the purchase and warehousing of wholesale supplies, and also ensures ready access to a stock of goods that might otherwise be unavailable on short notice. The cost savings and order-filling guarantees enable smaller retailers to reduce prices and maintain their retail stock so as to compete more effectively with larger retailers. *Northwest Stationers*, 472 U.S. at 295, 105 S.Ct. at 2620.

12

The Plaintiff ascribes nearly identical efficiency-enhancing characteristics to the Intercounty cooperative. (Ex. A, ¶¶ 18-19.)

The Supreme Court continued that "[t]he act of expulsion from a wholesale cooperative does not necessarily imply anticompetitive animus and thereby raise a probability of anticompetitive effect.... Nor would the act of expulsion characteristically be likely to result in predominantly anticompetitive effects, at least in the type of situation this case presents. Unless the cooperative possesses market power or exclusive access to an element to effective competition, the conclusion that expulsion is virtually always likely to have an anticompetitive effect is not warranted." *Northwest Stationers*, 472 U.S. at 296, 110 S.Ct. at 2620-2621; *see Bogan v. Hodgkins*, 166 F.3d 509, 514 (2d Cir. 1999) ("the per se approach has generally been limited to cases in which firms with market power boycott suppliers or customers in order to discourage them from doing business with a competitor."). With respect to the plaintiff's argument that Northwest's real motive to expel the plaintiff from the cooperative was to place plaintiff at a competitive disadvantage, the Supreme Court noted that such an argument would have to be evaluated under the rule-of-reason standard. *Northwest Stationers*, 472 U.S. at 296, n.7.

Likewise here, in the absence of market power or exclusive access to an element to effective competition, the denial of Plaintiff's membership application does not raise the probability of anticompetitive effect and must be evaluated under the rule-of-reason standard.

"Market power has been defined as "the ability to raise price significantly above the competitive level without losing all of one's business," and "may be shown by evidence of specific conduct indicating the defendant's power to control prices or exclude competition." *K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.*, 61 F.3d 123, 129 (2d Cir.

13

1995).   The Plaintiff alleges that Intercounty has "substantial market power" because of its ability to "buy mid-level appliances at discounted prices."   (Ex. A, ¶ 14.)   In making this allegation, Plaintiff excludes from the purported market all of the department stores, retail chains and wholesale outlets that routinely buy mid-level appliances at discounted prices in and around Long Island, including such well known companies as Best Buy, Circuit City, Sears, PC Richard & Son, Price Club, Lowe's, Home Depot, Wal Mart and Target.   Discovery is not required to prove the obvious; that Intercounty lacks the power to control prices or exclude competition in the mid-level appliance market that Intercounty faces.   Plaintiff's purely conclusory allegation of market power is insufficient to survive this motion. *Chapman v. New York State Div. for Youth*, 04 Civ. 8672005, 2005 WL 2407548, at *9 (N.D.N.Y. September 29, 2005) ("Plaintiffs have not ... provided a sufficient factual predicate to support an inference that [defendant] enjoys any substantial market power in the broader market for restraint services. This failure is fatal to their antitrust claims.")

Plaintiff's allegation that Intercounty possesses exclusive access to elements essential to effective competition is likewise deficient.   Plaintiff does not allege that Intercounty has entered into any agreement or arrangement with any supplier or manufacturer to deny Plaintiff access to the elements -- volume discounts and the availability of multiple manufacturers -- that Plaintiff claims it needs to effectively compete. *See National Camp Ass'n,* 2000 WL 1844764, at *5 ("Again, the plaintiff has failed to produce evidence establishing that membership in ACA is 'essential' to the ability to compete effectively.")   Plaintiff's failure to allege that it has solicited membership in a competing cooperative further undermines Plaintiff's exclusive access argument.

14

Consequently, this Court must conclude that Intercounty's conduct does not rise to the level of a *per se* refusal to deal.

### POINT IV

### PLAINTIFF HAS NOT ALLEGED A COGNIZABLE PRODUCT MARKET OR GEOGRAPHIC MARKET

"Under the rule of reason, a plaintiff who alleges an antitrust violation bears the burden of establishing that the challenged action has had an actual adverse effect on competition as a whole in the relevant market.... The plaintiff must allege a relevant geographic and product market in which trade was unreasonably restrained or monopolized..... In addition, the complaint must allege a relevant product market in which the anti-competitive effects of the challenged activity can be assessed." *Continental Orthopedic Appliances, Inc. v. Health Ins. Plan*, 40 F.Supp.2d 109, 117 (E.D.N.Y. 1999).

A.     Plaintiff Has Not Alleged A Relevant Product Market

A relevant product market is "composed of products that have reasonable interchangeability for the purposes for which they are produced--price, use and qualities considered." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 404, 76 S.Ct. 994 (1956). "If a complaint fails to allege facts regarding substitute products, to distinguish among apparently comparable products, or to allege other pertinent facts relating to cross-elasticity of demand[3] ... a court may grant a Rule 12(b)(6) motion." *E&L Consulting, Ltd. v. Doman Industries Ltd.*, 360 F.Supp.2d 465, 472 (E.D.N.Y. 2005). "Although extensive analyses of reasonable interchangeability and cross elasticity of demand ... are not required at the pleading

---

[3] Cross-elasticity of demand refers to the "extent to which consumers will change their consumption of one product in response to a price change in another." *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 469, 112 S.Ct. 2072 (1992).

15

stage, ... an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes--analysis of the interchangeability of use or the cross-elasticity of demand--and it must be plausible." *Id.*, citing *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001).

Under the foregoing authority, Plaintiff's allegation of a "mid-level appliance market" is defective. Among other things, Plaintiff seeks to limit the market to only the "major brands, such as, General Electric, Whirlpool, Maytag and Frigidaire appliances." (Ex. A, ¶ 7.) However, Plaintiff fails to allege any pertinent facts relating to comparable products or to interchangeability of use or cross-elasticity of demand, including a plausible explanation for excluding non-major brands from the market.

B.      Plaintiff Has Not Alleged A Relevant Geographic Market

A relevant geographic market "is that area to which consumers can practically turn for alternative sources of the product and in which the antitrust defendants face competition." *U.S. v. Long Island Jewish Medical Center*, 983 F.Supp. 121, 140 (E.D.N.Y. 1997). Plaintiff's allegation of a market consisting of Nassau and Suffolk Counties is unduly restrictive and ignores, among other things, the far broader geographic area in which Intercounty's members conduct their business. *See Evac, LLC v. Pataki*, 89 F.Supp.2d 250, 261 (N.D.N.Y. 2000).

16

## POINT V

### PLAINTIFF'S DONNELLY ACT
### CLAIM SHOULD BE DISMISSED

"The New York Court of Appeals has held that the Donnelly Act 'should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in statutory interpretation or the legislative history justify such a result.'" *S.O. Textiles, Inc. v. A&E Products Group*, 18 F.Supp.2d 232, 244 (S.D.N.Y. 1998), quoting *Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 335, 525 N.Y.S.2d 816, 520 N.E.2d 535 (1988). Under this authority, courts have routinely dismissed Donnelly Action claims premised upon the same facts as dismissed Sherman Act claims. *E.g.*, *Bologna v. Allstate Ins. Co.*, 138 F.Supp.2d 310, 320-21 (E.D.N.Y. 2001). This Court should do the same.

17

## CONCLUSION

For the reasons set forth herein, Intercounty Appliance Corporation respectfully request that this Honorable Court dismiss the Complaint and grant such other and further relief as this Court deems just and proper.

Dated:  Garden City, New York
        February 16, 2006

                                        Weinberg, Gross & Pergament LLP
                                        Attorneys for Intercounty Appliance Corporation


                            By:         _____
                                        Marc A. Pergament (MP-6183)
                                        400 Garden City Plaza, Suite 403
                                        Garden City, New York 11530
                                        (516) 877-2424

                                              -and-

                                        Leeds Morrelli & Brown, P.C.
                                        By: Robert Rosen
                                        1 Old Country Road
                                        Carle Place, New York 11514
                                        (516) 873-9550

<u>AFFIDAVIT OF SERVICE BY E-MAIL AND BY FEDERAL EXPRESS</u>

RE:   CONSUMERS WAREHOUSE CENTER, INC. V. INTERCOUNTY APPLIANCE
      CORPORATION AND NECO ALLIANCE, LLC
      INDEX NO. CV-05 5549 (JG) (MO)

STATE OF NEW YORK          )
                           )ss.:
COUNTY OF NASSAU           )

        KIMBERLY GALANTAI, being duly sworn, deposes and says:

        That I am not a party to this action, am over the age of 18 years, and reside in
Rockville Centre, New York.

        That on the 17th day of February, 2006, I served the within MEMORANDUM OF
LAW upon the following parties by e-mailing a true copy of same to the email address as noted
below and at their following respective addresses by depositing a true copy of the same enclosed in
a properly addressed Federal Express envelope which was placed in the Federal Express depository
located in the building at 400 Garden City Plaza, Garden City, New York  11530 which was under
the exclusive care and custody of the Federal Express.

                        Platzer Swergold Karlin Levine
                        Goldberg & Jaslow, LLP.
                        Attorneys for Neco Alliance, LLC
                        1065 Avenue of Americas
                        New York, New York 10018
                        rhochberg@platzerlaw.com
                        TRACKING NO. 7908 1912 6662


                        Fred Newman, Esq.
                        Salamon, Gruber, Newman & Blaymore, P.C.
                        Attorneys for Plaintiff
                        97 Powerhouse Road - Suite 102
                        Roslyn Heights, New York 11577
                        fnewman@sgnblaw.com
                        TRACKING NO. 7926 6364 5183


                        _____
                        KIMBERLY GALANTAI

Sworn to before me this
17th day of February, 2006.

_____
NOTARY PUBLIC

PATRICIA KIRBY
NOTARY PUBLIC, State of New York
No. 01KI5020989
Qualified in Nassau County
Commission Expires Dec. 6, ~~March 8, 2006~~