------------------------------------------------------------- X
CONSUMERS WAREHOUSE CENTER, INC.,    :
                                 :
                   Plaintiff,    :
                                 :
                                 :    MEMORANDUM
        - against -        :    AND ORDER
                                 :
INTERCOUNTY APPLIANCE CORP. and      :    05 CV 5549
NECO ALLIANCE, LLC,                  :
                                 :
                 Defendants.   :
------------------------------------------------------------- X

A P P E A R A N C E S :

    SALAMON, GRUBER, NEWMAN & BLAYMORE, P.C.
        97 Powerhouse Road
        Suite 102
        Roslyn Heights, New York  11577
    By:   Fred Newman
        Attorneys for Plaintiff

    PLATZER SWERGOLD KARLIN LEVINE GOLDBERG & JASLOW, LLP
        1065 Avenue of the Americas
        New York, New York 10018
    By:   Steven D. Karlin
        Attorneys for Defendant Neco Alliance, LLC

    WEINBERG, GROSS & PERGAMENT LLP
        400 Garden City Plaza
        Garden City, New York  11530
    By:   Marc A. Pergament

        - and -

    LEEDS MORELLI & BROWN, P.C.
        1 Old Country Road
        Carle Place, New York  11514
    By:   Robert Rosen
        Attorneys for Defendant Intercounty Appliance Corp.

JOHN GLEESON, United States District Judge:

Defendants Intercounty Appliance Corporation ("Intercounty") and Neco Alliance LLP ("Neco") are cooperatives, or "buying groups," comprised of small and mid-size retailers of household appliances. By cooperating, member retailers are able to take advantage of certain economies of scale -- chief among them volume discounts offered by appliance manufacturers -- that would otherwise be available only to larger retailers. Plaintiff Consumers Warehouse Center ("CWC") brought this action after Intercounty and Neco denied CWC's applications for membership. This exclusion, the complaint alleges, constituted a concerted refusal to deal, or "group boycott," in *per se* violation of § 1 of the Sherman Act, 15 U.S.C. § 1. CWC seeks treble damages pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15(a), and an injunction ordering Intercounty and Neco to grant its applications for membership.

Intercounty has moved to dismiss the complaint, arguing that CWC has failed to allege a *per se* violation of § 1 and, in any event, lacks antitrust standing to prosecute this case. Neco has joined that motion and argues additionally that the court has no personal jurisdiction over it. Oral argument was heard on the motions on May 12, 2006. For the reasons set forth below, the motions are denied.

## BACKGROUND

The following facts are alleged in the complaint, which I must accept as true for the purpose of deciding this motion. CWC is a retailer of kitchen and bath furnishings on Long Island. Although it currently specializes in high-end brands of appliances, it would like to broaden its business to sell mid-level brands as well. To that end, CWC applied for membership in the Intercounty buying cooperative on August 16, 2005.

Intercounty's members are retailers of "mid-level appliances to the Long Island, New York market." Complaint ¶ 7. The complaint identifies three specific competitive advantages that cooperative members enjoy: (1) lower purchase prices on appliances, resulting from volume discounts offered by the mid-level appliance manufacturers; (2) maintenance of a shared warehouse facility, which allows for faster delivery of customer orders; and (3) access to "approved dealer" status from all major brands of mid-level appliances. Although individual cooperative members compete against each other for retail sales, these shared advantages allow members of Intercounty, as a group, "to dominate and control the Long Island mid-level appliance market," and it is impossible to compete in the Long Island retail market for mid-level appliances without Intercounty membership.[1]

Unfortunately for CWC, its application was "voted down" by Intercounty. No reason was given for the denial. Thereafter, CWC applied for membership in Neco, which the complaint describes as a larger cooperative "comprised of a group of members, each of whom is engaged in the business of the sale of mid-level appliances ... in the northeastern part of the United States." *Id.* ¶ 9. Neco also denied CWC's application, as "Neco will only admit an individual dealer to membership if that dealer is admitted to membership in a local buying group or cooperative." *Id.* ¶ 10. In this way, "Neco is an aggregate of ... approximately five" individual buying groups in the northeast. *Id.* ¶ 11.

The complaint alleges Neco and Intercounty "engaged in joint activity" in denying CWC's applications, *id.* ¶ 28, with Intercounty acting both on its own behalf and "as

---

[1] In this regard, CWC alleges that there is a sub-market for mid-level appliances on Long Island sold by small- and medium-sized retailers that is distinct from the market for the same appliances sold by large retailers like Sears and Best Buy. Despite the defendants' suggestion that this allegation is implausible, it must be taken as true at this stage of the case.

3

agent for Neco," *id*. ¶ 35. CWC alleges there is "no reasonable ground upon which it should be denied membership" in Intercounty and Neco.

DISCUSSION

A. <u>The Motion to Dismiss Standard</u>

In considering a motion to dismiss under Rule 12(b)(1) or (6), a federal court is required to accept as true the factual assertions in the complaint and to make all reasonable inferences in favor of the plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990) (Fed. R. Civ. P. 12(b)(6)); *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (Fed. R. Civ. P. 12(b)(1)). The motion may not be granted "unless it appears beyond doubt . . . that the plaintiff can prove no set of facts which would entitle him to relief," *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997) (internal quotation marks and citation omitted), because the question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but, [rather,] whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, in order to survive a motion to dismiss, "the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action." *York v. Ass'n of the Bar of New York*, 286 F.3d 122, 125 (2d Cir. 2002), *cert. denied*, 537 U.S. 1089 (2002).

B. <u>The Merits</u>

Intercounty argues CWC has failed to state a *per se* violation of the Sherman Act and that, in any event, it lacks antitrust standing to prosecute the case at all. Neco argues it is not subject to the personal jurisdiction of this court. I address these contentions in turn below.

1. <u>*Per Se* Treatment</u>

4

Section 1 of the Sherman Act declares "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, . . . to be illegal." 15 U.S.C. § 1. As the Supreme Court has often explained, however, a restraint of trade is proscribed by the Act only if it is unreasonable. *See Standard Oil Co. v. United States*, 221 U.S. 1 (1911). That inquiry is ordinarily guided by so-called "rule-of-reason" analysis, which requires a showing of predominant anticompetitive effect based on actual market conditions,

> unless the challenged action falls into the category of agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use. This *per se* approach permits categorical judgments with respect to certain business practices that have proved to be predominantly anticompetitive.

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 289 (1985) (internal citations and quotation marks omitted).

Whether a buying cooperative's decision to exclude a retailer warrants *per se* treatment was precisely the question at issue in *Northwest Stationers*, and the Supreme Court's opinion in that case accordingly provides the applicable framework for analyzing this one.

Northwest was "a purchasing cooperative made up of approximately 100 office supply retailers in the Pacific Northwest States" that, by taking advantage of volume discounts and by sharing warehouse facilities, permitted its members "to achieve economies of scale in purchasing and warehousing that would [have] otherwise be[en] unavailable to them." *Id*. at 286-87. Without giving a reason, the cooperative expelled Pacific, and Pacific sued, claiming a *per se* violation of § 1 of the Sherman Act. *Id*. at 287-88.

5

The Court concluded that, in general:

> Wholesale purchasing cooperatives such as Northwest are not a form of concerted activity characteristically likely to result in predominantly anticompetitive effects. Rather, such cooperative arrangements would seem to be designed to increase economic efficiency and render markets more, rather than less, competitive. The arrangement permits the participating retailers to achieve economies of scale in both the purchase and warehousing of wholesale supplies, and also ensures ready access to a stock of goods that might otherwise be unavailable on short notice. The cost savings and order-filling guarantees enable smaller retailers to reduce prices and maintain their retail stock so as to compete more effectively with larger retailers.

*Id*. at 295 (internal citations and quotation marks omitted).

More particularly, with respect to the cooperative's exclusion of a retailer that would be a potential competitor of the cooperative's members, the Court explained:

> The act of expulsion from a wholesale cooperative does not necessarily imply anticompetitive animus and thereby raise a probability of anticompetitive effect. Wholesale purchasing cooperatives must establish and enforce reasonable rules in order to function effectively . . . [including, for example, rules] needed . . . for monitoring the creditworthiness of [their] members. Nor would the expulsion characteristically be likely to result in predominantly anticompetitive effects, at least in the type of situation this case presents. *Unless the cooperative possesses market power or exclusive access to an element essential to effective competition, the conclusion that expulsion is virtually always likely to have an anticompetitive effect is not warranted. Absent such a showing with respect to a cooperative buying arrangement, courts should apply a rule-of-reason analysis*.

*Id*. at 296 (internal citations and footnote omitted) (emphasis supplied). In a footnote, the Court further explained that a cooperative's "concerted refusal to deal with [a non-member retailer] on substantially equal terms . . . might justify *per se* invalidation if it placed a competing firm at a severe competitive disadvantage." *Id*. at 295 n.6 (citing Joseph F. Brodley, *Joint Ventures and Antitrust Policy*, 95 Harv. L. Rev. 1523, 1532 (1982)).

CWC can take a hint, and it has alleged that Intercounty possesses both market power and "exclusive access to an element essential to effective competition." Complaint ¶¶ 27,

31-32. Thus far there have of course been no such showings. As the Court noted in *Northwest Stationers*, however, "*Per se* rules may require considerable inquiry into market conditions before the evidence justifies a presumption of anticompetitive conduct." *Id*. at 296 (quoting *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 104 n.26 (1984)). Intercounty's various protestations that CWC will not be able to prove its allegations will have to wait for summary judgment; at this early stage of the case, CWC is entitled to an opportunity to try to make its case.

2. Antitrust Standing

To bring a claim under § 4 of the Clayton Act,[2] a private plaintiff must demonstrate what courts have come to call "antitrust standing;" that is, the plaintiff must allege an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The antitrust laws, after all, "were enacted for the protection of *competition*, not *competitors*." *Id*. at 488 (internal quotes and citation omitted) (emphasis supplied). In this regard, Intercounty argues that CWC has failed sufficiently to allege antitrust standing because it "has not alleged any of the hallmarks of antitrust injury . . . [such as] a denial of service, reduced output, reduced quality or increased prices." Def. Br. 9. Thus, Intercounty argues, CWC has alleged merely a private injury that raises none of the public concerns to which the antitrust laws are addressed.

---

[2] That section provides, in relevant part: "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a).

The injury CWC has alleged would not only be harmful to CWC, but to competition as well. The basis in antitrust theory of the public harm potentially arising from a claim such as CWC's has been explained succinctly by Professor Brodley, in an article the Supreme Court cited favorably three times in *Northwest Stationers*:

> A joint venture may . . . injure competition by excluding or hampering outside firms in their access to an essential requirement. This result will most likely occur when competitors with market power form a marketing or input supply joint venture and the joint venture has natural monopoly characteristics. Under such conditions, refusal by the joint venture to deal with outside firms may totally exclude such firms from the market. Even if the joint venture does deal with outside firms, it may place them at a severe competitive disadvantage by treating them less favorably than it treats the parents.
>
> The joint venture's ability to deprive a rival of access to a scarce input may be used by parent firms operating in a cartel-like fashion to discipline recalcitrant firms and to bar entry by potential mavericks. Although collusive activities such as price-fixing and output restriction are themselves unlawful, market exclusion and access discrimination provide early warnings of collusion risk, often visible long before the other, more egregious restraints on competition.
>
> Exclusion of a business rival by a group of competitors combined in a joint venture may also undermine competition on the merits or competitive equality. The disfavored firm suffers not as a result of any competitive failure of its own, but because rival firms have combined against it. This exclusion both offends notions of fairness and impairs the efficiency of the market mechanism. Market exclusion or injury to a rival firm by joint venture control of a scarce resource is objectionable unless it is essential to the viability of the productive joint enterprise.

Brodley, *supra*, 95 Harv. L. Rev. at 1532-34 (footnotes omitted). *See also Associated Press v. United States*, 326 U.S. 1, 4 (1945) (Associated Press bylaws "which granted each member powers to block its non-member competitors from membership" violates Sherman Act); *Official Airline Guides, Inc. v. F.T.C.*, 630 F.2d 920, 926 (2d Cir. 1980) (recognizing "the duty that the joint owners of a scarce resource have to make the resource available to all potential users on nondiscriminatory terms").

Again, it may well be that CWC will not be able to prove anticompetitive effect in this case. But antitrust harm has been alleged, and CWC is entitled to an opportunity to make its case.

### 3. Personal Jurisdiction Over Neco

Finally, Neco objects that it is not subject to the personal jurisdiction of this Court. The complaint alleges only that Neco and Intercounty conspired to deny CWC membership in the two cooperatives, and that Intercounty acted as Neco's agent in doing so. Neco was served with process in New Jersey.

CWC contends that both venue and personal jurisdiction over Neco are proper in this district under § 12 of the Clayton Act, which provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. The latter authorization of worldwide service of process applies only if the foregoing venue test is satisfied; that is, as relevant here, worldwide service is authorized only if the defendant "transacts business" in this district. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005). Of course, service of process may also be proper -- and thus confer personal jurisdiction -- under the New York long arm statute, N.Y. C.P.L.R. § 302(a), which allows in relevant part for "personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." *See also* Fed. R. Civ. P. 4(k)(1) ("Service of a summons . . . is effective to establish jurisdiction over the person of a defendant (A) who could be subjected

9

to the jurisdiction of a court of general jurisdiction in the state in which the district court is located . . . .").

Considering only the spare allegations in the complaint, the motion presents a close question as to whether Neco was "transacting business" in New York within the meaning of § 12 of the Clayton Act and the New York long arm statute.[3] Counsel for CWC, however, has stated in opposing this motion that Neco has members in Nassau and Suffolk counties and that it "makes available" to those members the ability to buy appliances at its discount rate. I deem that allegation an amendment to the complaint, and, construed liberally, it sufficiently alleges that Neco is involved in transacting business in this district, namely, the business of procuring appliances at discount prices for its members located here.

Neco's motion to dismiss for lack of personal jurisdiction is denied.

CONCLUSION

For the reasons set for the above, the motions to dismiss are denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
       March 26, 2007

---

[3] I do not mean to suggest that the reach of jurisdiction by "transacting business" afforded by the two statutes is coextensive.